UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADIS GREBOVIC,

    Plaintiff,

v.

GREAT AMERICAN LINES, INC.,

    Defendant.
    _____/

Case No. 06-13204

Honorable Nancy G. Edmunds

**ORDER (1) GRANTING PLAINTIFF'S PETITION TO COMPEL ARBITRATION [7], AND (2) DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [9]**

    Pending before this Court are two motions. First, Plaintiff Adis Grebovic filed a petition to compel arbitration on December 12, 2006. [7] Then, concurrent with Defendant Great American Lines Inc.'s response to Plaintiff's petition, it filed a separate motion for summary judgment on December 29, 2006. [9] Plaintiff originally filed a *pro se* complaint in Michigan state court on June 9, 2006, and Defendant then removed the case to this Court on July 14, 2006 based upon federal question jurisdiction due to Plaintiff's allegations of federal constitutional violations. Plaintiff subsequently obtained legal counsel, who filed the petition to compel arbitration presently before the Court.

    In support of his petition, Plaintiff argues that a signed lease agreement between the parties provides for arbitration of any disputes, and that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, mandates an order compelling arbitration here. Defendant

1

asserts that Plaintiff waived the agreement's arbitration clause by originally filing this action in state court, and Defendant has refused Plaintiff's request to allow him to voluntarily dismiss this case in favor of arbitration. For the reasons set forth below, the Court GRANTS Plaintiff's petition to compel arbitration and DENIES WITHOUT PREJUDICE Defendant's motion for summary judgment.

**I. FACTS**

This dispute arises out of an Independent Contractor Service Agreement (the "Agreement"), dated November 29, 2004, for Plaintiff to lease his trucking equipment and driving services to Defendant. (Pl.'s Pet., Ex. 1.) Plaintiff provided such services to Defendant from the agreement's effective date until some time in December 2005. Plaintiff claims that on December 14, 2005 he verbally notified one of Defendant's employees, Kim Natale, that he was canceling the Agreement at that time and placing his truck in storage due to an extended trip to Europe at the end of the month. (Pl.'s Pet. at 2.) Then, on December 28, Plaintiff received a call from two of Defendant's other employees, Kevin Natale and Daniel Schultz, stating that he was selected for a random drug test as required by federal transportation regulations.[1] Plaintiff informed Mr. Natale and Schultz that he did not have to submit to the drug test because he had already canceled the Agreement and was leaving for Europe in a matter of days. (*Id.*) Defendant asserts that Mr. Natale and Schultz called Plaintiff back and reiterated that Defendant would terminate the Agreement if he refused to submit to the test, and

---

[1] Defendant claims that this call occurred on December 26, (Def.'s Resp. to Pl.'s Pet. (hereinafter "Def.'s Resp.") at 2) but the discrepancy does not appear to be material for purposes of the instant motions.

Plaintiff confirmed that he would not be tested.  Defendant formally terminated the Agreement on December 29, 2005.  (Def.'s Resp., Ex. D.)  It is undisputed that Defendant would have been completely justified in taking this action if, in fact, Plaintiff wrongfully refused the drug test.

Upon his return to the United States in May 2006, Plaintiff sought to return to work with Defendant, but was told that his refusal to take the drug test in December precluded any further relationship between the parties.  (Def.'s Resp. at 4.)  Plaintiff then sought employment with another trucking company, but he was denied there as well once Defendant's employment verification form indicated that Plaintiff was fired for refusing a mandatory drug test.  (Pl.'s Pet. at 2.)  Plaintiff asserts that he has not been able to obtain employment with any other trucking company for the same reason.

## II. STANDARD OF REVIEW – MOTION TO COMPEL ARBITRATION

The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

"A party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the

agreement." *Id.*

"The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)) (internal citation omitted).

## III.  ANALYSIS

The Agreement contains the following arbitration provision, reproduced in relevant part:

> 16. DISPUTE RESOLUTION: Any dispute arising out of or relating to the terms or implementation of this Agreement including any allegation of breach thereof or of violations of the federal leasing regulations (49 C.F.R. Part 376) or other federal, state, or local statutory, regulatory, or common law, shall be fully and finally resolved by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). . . .  Both parties agree to be fully and finally bound by the arbitration award and, where allowed by law, a judgment may be entered on the award in any court having jurisdiction thereof.

(Pl.'s Pet., Ex. 1 ¶ 16.)

"The first question to be decided [under § 4 of the FAA] is whether 'the making of the agreement for arbitration or the failure to comply therewith' is an issue. If not, the court is required to order the parties to proceed to arbitration." *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 159 (6th Cir. 1983). Since neither party argues that the Agreement is somehow invalid and it is readily apparent that Defendant

4

is not complying with the Agreement's provisions by opposing the instant motion, the only remaining question is whether the Court must compel arbitration at this time.

Based upon the foregoing statutory language and case law citations, Plaintiff has a strong argument for compelling arbitration. Such a conclusion becomes even stronger given the breadth of issues covered by the Agreement's arbitration clause,[2] and the fact that Defendant does not argue that this dispute falls outside of the Agreement's purview.

In opposition to the motion, Defendant first argues that Plaintiff should be deemed to have waived his right to demand arbitration by choosing to file the instant lawsuit. In support, Defendant cites two Michigan Court of Appeals cases, but neither of these addressed a claim under the FAA and both actually dispute Defendant's argument on this issue when additional parts of the opinions are reviewed.

It is true that under Michigan law courts have held that a party can waive the right to settle a dispute in arbitration by pursuing litigation instead. Still, the "[w]aiver of a contractual right to arbitrate is disfavored," and "[t]he 'party arguing there has been a waiver of this right bears a heavy burden of proof' and 'must demonstrate knowledge of an existing right to compel arbitration, acts inconsistent with the right to arbitrate, and prejudice resulting from the inconsistent acts.'" *Madison Dist. Pub. Sch. v. Myers*, 637 N.W.2d 526, 529 (Mich. Ct. App. 2001) (quoting *Salesin v. State Farm Fire & Cas. Co.*,

---

[2]The parties agreed to arbitrate "[a]ny dispute arising out of . . . this Agreement including any . . . violations of . . . other federal, state or local statutory, regulatory or common law." (Pl.'s Pet. Ex. 1 ¶ 16.) Although Plaintiff's *pro se* complaint does not specify the basis for his claims, the Court is satisfied that the arbitration clause is sufficiently broad that virtually any viable claims Plaintiff could bring would be arbitrable.

5

581 N.W.2d 781 (Mich. Ct. App. 1998)). First of all, Defendant's brief on this point does not meet a "heavy burden of proof" and Defendant makes no case for why it would be prejudiced if this Court ordered arbitration, outside of a factually unsupported statement that "in the present case, arbitration would actually take longer and cost more than litigation."[3] (Def.'s Resp. at 6.) Furthermore, the plaintiff seeking to compel arbitration in *Meyers* had filed a lawsuit over a year-and-a-half prior to filing a demand for arbitration. *Id.* at 528. The instant case, however, involves a plaintiff who initially filed *pro se*, and the time between Plaintiff's filing of the Complaint and his subsequent demand for arbitration did not even span six months–a time when neither side filed any motions or began to conduct discovery in this matter. Moreover, Plaintiff's counsel filed his demand for arbitration within two months of the time counsel first appeared on Plaintiff's behalf in this case. On these facts, Defendant's argument that Plaintiff should be deemed to have waived his right to arbitration is unpersuasive.[4]

Defendant also cites a case from the Western District of Michigan, but this too leads the Court to conclude that Plaintiff's petition for arbitration must be granted. There, the court noted that:

> When asked by a party to compel arbitration under a contract, a federal court has four tasks: first, it must determine whether the parties agreed to arbitrate;

---

[3]Defendant's self-serving statement that, if its pending motion for summary judgment is granted the litigation would be over, does not constitute the necessary type of support.

[4]Defendant's other cited case is similarly inapposite on its facts, as the defendant there that was seeking to avoid arbitration had previously filed its own motion for summary judgment, thereby electing to proceed in resolving the dispute through litigation rather than arbitration. *Capital Mortgage Corp. v. Coopers & Lybrand*, 369 N.W.2d 922, 924 (Mich. Ct. App. 1985).

second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Rugumbwa v. Betten Motor Sales*, 136 F. Supp. 2d 729, 732 (W.D. Mich. 2001) (citing *Stout*, 228 F.3d at 714). Here, the Agreement clearly states the parties' intent to arbitrate, and the breadth of the language in the relevant clause covers the instant dispute here. Although Defendant posits that "Congress did not intend for issues related to the interpretation and enforcement of [the federal laws and regulations governing drug testing regulations for transportation workers] to be arbitrable," (Def.'s Resp. at 7) Defendant provides no support for this position, and the Court declines to adopt its bald assertion of fact on this issue given "the strong federal policy in favor of arbitration." *Stout*, 228 F.3d at 714. Therefore, arbitration of this dispute is also appropriate under the reasoning of *Rugumbwa*, contrary to Defendant's claims.[5]

Since the Court finds that Plaintiff's petition to compel arbitration must be GRANTED under the FAA, Defendant's motion for summary judgment is DENIED WITHOUT PREJUDICE as moot.

## IV. CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows: (1) Plaintiff's petition to compel arbitration is GRANTED, and (2) Defendant's motion for summary judgment is DENIED

---

[5]As with *Capital Mortgage*, the party seeking to arbitrate in *Rugumbwa* filed a motion for summary judgment, along with a number of other pleadings, prior to seeking arbitration. Thus, that case is also factually distinguishable from the one at bar here.

WITHOUT PREJUDICE.  Thus, Plaintiff is entitled to voluntarily dismiss this case without prejudice and Defendant is ORDERED to comply with Plaintiff's demand for arbitration of the dispute.

    SO ORDERED.

                      s/Nancy G. Edmunds
                      Nancy G. Edmunds
                      United States District Judge

Dated:  March 29, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 29, 2007, by electronic and/or ordinary mail.

                      s/Carol A. Hemeyer
                      Case Manager